WILLIAM E. DODGE STOKES, AS TRUSTEE, ETC., OF THE
PHELPS MISSION, APPELLANT, *v.* THE PHELPS MISSION
AND THE TRUSTEES OF THE EIGHTY-FOURTH STREET
PRESBYTERIAN CHURCH, RESPONDENTS, IMPLEADED WITH
HENRY DALE AND OTHERS.

*Action by a trustee of a corporation to restrain a wrongful conveyance of its property —
corporations having common trustees cannot enter into valid contracts — chapter 176
of 1876, authorizing the consolidation of two or more corporations, applies only
to such religious societies as have a denominational character.*

In this action, brought by the plaintiff, a trustee of the Phelps Mission, a corpora-
tion created and organized in 1876, under chapter 218 of 1854, authorizing the
formation of societies to establish free churches, against the corporate defend-
ants, and also against the individual defendants who are their trustees, the
complaint alleged that on the 13th day of October, 1886, at a meeting of
the board of trustees of said mission, at which were present five of said
trustees, a series of resolutions were submitted by one of them, the defendant
Atterbury, who was also the minister and pastor of the Eighty-fourth Street
Presbyterian Church, in the city of New York, which were adopted, whereby it
was resolved that the Phelps Mission enter into an agreement with the Eighty-
fourth Street Presbyterian Church for the union and consolidation of said two
corporations; that the said Presbyterian church, which was organized under the
act relating to religious corporations, passed in 1813, was, by its organization
and rules, governed differently from a free church, organized as is the Phelps
Mission; that the trustees of the church are elected by its pew-holders and attend-
ants from time to time; that it is subject to the government and rule of the
presbytery, and that, as a rule, the sittings are not free to all attendants, while
the Phelps' Mission has not, and cannot have, any members who have a voice in
the management of its property and affairs, which must be managed by its board
of trustees, which is self-perpetuating, and that the sittings in it and all the
privileges connected with it must be free.

That, since the commencement of this action an order has been granted, by the
Supreme Court upon an application made by all the trustees of the Phelps Mis-
sion, except the plaintiff, consolidating the said mission with the Eighty-fourth
Street Presbyterian Church; by which order a new corporation was created called
the Park Presbyterian Church, and that, pursuant to directions contained in the
order, the trustees had made a conveyance of the property of the mission to
the new corporation.

That this action to have the order granting a consolidation and the deed vacated,
and an injunction granted restraining any transfer of the property of the mission
to the church, was brought by the plaintiff, as a trustee of and on behalf of the
mission, because the corporation cannot bring the action, as the acts complained
of were participated in by all the trustees except the plaintiff.

*Held,* that the plaintiff was entitled to bring the action.

That the fact that one of the trustees of the Phelps Mission, who was alleged to have been the chief promoter of this scheme of consolidation, was also the pastor of the Eighty-fourth Street Presbyterian Church, would, of itself, be sufficient, if no other ground existed, to invalidate the whole proceedings.

That the consolidation of the two corporations was not authorized by section 3, of chapter 176 of 1876, which provides that any two or more of the corporations described in the first section were authorized thereby to unite and consolidate themselves into a single corporation, of the denomination to which at least one of such corporations shall belong, for the reason that the corporations referred to in that act are those having a denominational character, and those only, and that the section in no way relates to any religious societies, except those which belong to some church or denomination.

That the organic differences, between the corporation of a church under denominational control and a charitable society organized under the free church act, are so striking, that the property of the latter should not be allowed to be diverted from the uses to which it was intended to be devoted by its donors, to the support of an organization so essentially distinct and different.

APPEAL from an interlocutory judgment sustaining a demurrer to an amended complaint and to an amended supplemental complaint.

*George Richards,* for the appellant.

*William N. Snyder,* for the respondents.

VAN BRUNT, P. J.:

The facts alleged in the amended complaint and the amended supplemental complaint, so far as they relate to the questions necessary to be determined upon this appeal, seem to be as follows:

The Phelps Mission is a corporation created and organized in March, 1876, under the laws of the State of New York, authorizing the formation of societies to establish free churches, passed in 1854 (chap. 218), and of such corporation the plaintiff and the individual defendants are trustees. That the defendant, Anson G. P. Atterbury, is a clergyman and a minister and pastor of the Eighty-fourth Street Presbyterian Church in the city of New York hereinafter men‑tioned. That there have been large donations of property and money to said Phelps Mission to enable it to carry on the objects for which it was incorporated, and that since its organization such mission has been maintained as a free church. That on the 13th day of October, 1886, at a meeting of the board of trustees of said mission, at which were present five of said trustees, a series of reso-

lutions were submitted by one of the trustees present, the said Anson G. P. Atterbury, which were adopted, whereby it was resolved that the Phelps Mission enter into an agreement with the Eighty-fourth Street Presbyterian Church for the union and consolidation of said two corporations. That the said Eighty-fourth Street Presbyterian Church is a corporation organized under the laws of the State of New York relating to the incorporation of religious societies, passed in 1813, and the acts amendatory thereof. That the said Presbyterian church is by its organization and rules governed differently from a free church, organized as is the Phelps Mission; that its trustees are elected by its pew-holders and attendants from time to time; that it is subject to the government and rule of the presbytery, and that as a rule the sittings are not free to all attendants.

That the said Phelps Mission, as organized, has not and cannot have any members who have voice in the managements of its property and affairs, but that its affairs must be managed by its board of trustees, which is self-perpetuating and that the sittings in it and all the privileges connected with it must be free. That since the commencement of this action and in January, 1887, the trustees of the Phelps Mission, except the plaintiff, made an application to this court for an order consolidating the said mission with " the trustees of the Eighty-fourth Street Presbyterian Church" (a religious corporation created in 1853, under the act for the incorporation of religious societies, passed in 1813). That such order was granted creating a new corporation and conferring upon it the name of the Park Presbyterian Church. That the said order further provided that the Phelps Mission should make a conveyance of its property to the said new corporation, the Park Presbyterian Church, in pursuance of which order the trustees of the Phelps Mission have pretended to make a conveyance thereof. That the plaintiff brings this action as a trustee of and on behalf of the Phelps Mission, because the corporation cannot bring the action as the acts complained of were participated in by all the trustees except the plaintiff.

The defendants demurred upon the ground that the plaintiff had no legal capacity to sue, and that the complaints did not state facts sufficient to constitute a cause of action.

That actions may under certain conditions be brought upon behalf of a corporation by one of its trustees to redress wrongs done to the corporation seems to be too well settled to require citation of authority, and that this right exists as well in respect to religious corporations as to civil corporasions is equally well settled.

As a prerequisite to the maintenance of such action, it is necessary that the plaintiff should make it appear that he has applied to the trustees of the incorporation to bring the action in its name and that they have refused so to do, or that he has not applied because it would be useless to make such application, the trustees themselves beng the wrong-doers, whose acts are to be attacked. This condition the plaintiff has fulfilled. He has shown that all of his associate trustees were engaged in the conspiracy to deprive the Phelps Mission of vitality and rob it of its property for the benefit of another corporation in the success of which one of them was deeply interested, being the pastor of the recipient of the stolen goods. The fact that one of the trustees of the Phelps Mission, and who is alleged to have been the chief promoter of this scheme of consolidation was also the pastor of the Eighty-fourth Street Presbyterian Church would of itself be sufficient, if no other ground existed, to invalidate the whole proceeding.

The principle that corporations having common officers and trustees cannot enter into valid contracts with each other has become well established in the jurisprudence of this country and in England (*Metropolitan Elevated Railway Co.* v. *The Manhattan Railway Co.*, 11 Daly, 373, and cases there cited), and needs no elaboration here.

It is held that each corporation has the right to the unbiased counsel of each of its officers and trustees; and where an officer or trustee is connected with two different corporations, each, in any dealings between the two, will be deprived of that to which they are entitled, viz., the unbiased aid and counsel of such trusteee; and, therefore, they must not contract, and if they do so, such contract will be set aside at the instance of any party having the right to call the transaction in question. A more striking illustration of the salutary tendency of this rule has never been presented to any court than is established by the facts alleged in the complaint in this action. The pastor of the Eighty-fourth street church, also a

trustee of the corporation, called the Phelps Mission, assumes that it would be greatly for his advantage if he can, by means of his Eighty-fourth street church, swallow up property of the Phelps Mission, which he also represents, and apply the same to the sup port of the church over which he ministers; and he sets about the consummation of this purpose, and as trustee of the Phelps Mission he brings about the surrender of the whole of its property to the Eighty-fourth street church, of which he is pastor.

It is clear that the whole interest of this pastor was in the Eighty-fourth Street church, and that the Phelps Mission, as far as he was concerned, not only did not have the benefit of his aid and counsel, but that he used his position as a trustee of said mission to accomplish the object of absorbing, for the benefit of the church to which he must look for his support, all the property and assets of the mission. But there is another difficulty in the way of the consummation of this scheme, and that is, that a corporation formed for the purpose of founding and continuing one or more free churches, pursuant to the provisions of chapter 218 of the Laws of 1854, as the Phelps Mission was incorporated, cannot be consolidated with a corporation formed under the act entitled "An act to provide for the incorporation of religious societies," passed in 1813, as the Eighty-fourth Street Presbyterian Church was incorporated.

It is sought to sustain this attempted consolidation under the provisions of chapter 176 of the Laws of 1876, but we think that a very brief examination of the acts referred to will demonstrate that the claim is without foundation.

The act of 1876 is declared by its title to be a supplement to the act of 1813, and is, therefore, to be read with it and as a part of it, and with and as a part of no other act. The first section of the act of 1813, which is an act to provide for the formation of religious societies as has been stated, provides for the incorporation of churches or congregations in communion with the Protestant Episcopal Church. Section 2 provides for the incorporations of trustees of Reformed Protestant Dutch Churches and congregations. Section 3 provides for the incorporation of churches or congregations of any other church, congregation or religious society, and the remaining sections relate to the powers and duties of such corporations and their trustees. The first section of the supplemental act

of 1876, then provides that the officers of any church, congregation or religious society incorporated under the laws of this State, shall administer the temporalities thereof and hold and apply the estate and property belonging thereto and the revenues of the same, for the benefit of such corporation according to the rules and usages of the church or denomination to which said corporation shall belong, and it shall not be lawful to divest such estate, property or revenue, to any purpose except the support and maintenance of any church or religious or benevolent institution or object connected with the church or denomination to which such corporation shall belong.

It is evident that the corporations above referred to, are those having a denominational character and those only, and that the section in no way relates to any religious society except those that belong to some church or denomination, because those are the only class of corporations mentioned in the section and to which its provisions can apply. The act of 1876 being supplemental to the act of 1813, it is clear that the words religious society are used in the first mentioned act in the same manner as the words religious societies are used in the title of the act of 1813, and has no application whatever to benevolent societies, whether they are religious in their character or not. After having thus carefully provided that the estate and property of a religious corporation shall not be divested, in section 3 of the act is pointed out the method by which the provisions of section 1 may be nullified. Section 3 provides that any two or more corporations aforesaid (that is, religious societies belonging to some church or denomination) are hereby authorized to unite and consolidate themselves into a single corporation of the denomination (another indication that it was denominational corporations which were being legislated about) to which at least one of such corporations shall belong, etc.

The Eighty-fourth street congregation belonged to the Presbytetian denomination — the Phelps mission had no denominational characteristic stamped upon it, and is under no ecclesiastical or denominational control, and therefore did not come within the terms of the act of 1813.

The organic differences between the corporation of a church under denominational control and a charitable society organized under the free church act, are so striking that the property of the

latter should not be allowed to be diverted from the uses to which it was intended to be devoted by its donors, to the support of an organization so essentially distinct and different.

The act under which this mission was incorporated does not make the corporation subject to any of the provisions of the acts relating to the incorporation of churches and congregations, but applies to it the provisions of the act of 1848, relating to the incorporation of benevolent, charitable, scientific and missionary societies.

It is true, that in the case of *Stephenson* v. *Short* (92 N. Y., 446), the Court of Appeals have held that a missionary society is a religious society, but even if the corporation of the Phelps mission is to be considered as a religious society, this fact does not bring it under the provisions of the act of 1876, because, as has been seen, the act of 1876 evidently relates to religious societies having denominational relations and formed under the act of 1813 and similar acts, and its provisions have no application to charitable societies formed under the act of 1848, or similar acts.

We are of the opinion, therefore, that the attempted consolidation being utterly void, the plaintiff was entitled, upon the facts set forth in his complaint, to have the same so declared.

The judgment must be reversed and demurrer overruled, with leave to defendants to answer upon payment of costs of appeal and costs of demurrer in court below.

MACOMBER, J., concurred; BARTLETT, J., concurred in the result.

Judgment reversed and demurrer overruled, with leave to answer on payment of costs of appeal and demurrer.